# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-2005
_____

United States of America

*Plaintiff - Appellee*

v.

Tan Fong Vang

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: March 18, 2021
Filed: July 7, 2021
_____

Before SHEPHERD, ERICKSON, and KOBES, Circuit Judges.
_____

KOBES, Circuit Judge.

Tan Fong Vang was convicted of conspiring to distribute marijuana and possessing a firearm in furtherance of a drug trafficking crime. He appeals, arguing

that the evidence was insufficient to support his conviction on the gun charge and that the district court[1] made errors at sentencing. We affirm.

## I.

A confidential informant told police that Vang was distributing hundreds of pounds of marijuana. Officers set up controlled buys of pound-quantities of marijuana from Vang's co-conspirators, executed search warrants on their homes, and arrested them. After the co-conspirators informed on Vang, police executed a search warrant on his home. Inside, they found about 294 pounds of marijuana in one-pound bags in the basement, along with drug ledgers, money, and a loaded handgun in a concealable holster in Vang's bedroom. Vang volunteered that the gun was his.

Vang was indicted for conspiring to distribute over 100 kilograms of marijuana, 21 U.S.C. §§ 846 and 841(b)(1)(B), and for possessing a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(i). He pleaded guilty to the conspiracy count three days before trial but went to trial on the gun count. The jury found him guilty of possessing the gun in furtherance of drug trafficking.

Vang's Presentence Investigation Report estimated he distributed about 1,136 pounds of marijuana and recommended a base offense level of 26. This was based on a witness who saw a stash of 300 pounds in Vang's home. At sentencing, the district court determined that the PSR undercounted the amount of marijuana. The district court looked to the record and decided that the amount of marijuana should instead yield a base offense level of 30. The district court also refused to give Vang a two-level reduction for acceptance of responsibility. Vang was sentenced to 110 months in prison on the first count and a consecutive 60 months on the second count.

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

Vang appeals, arguing that there was insufficient evidence that he used his handgun in furtherance of drug trafficking, that the district court miscalculated the amount of marijuana, and that the district court erred by not giving him credit for accepting responsibility.

## II.

### A.

When reviewing the sufficiency of the evidence, we "view[] the evidence in the light most favorable to the verdict and draw[] all reasonable inferences in favor of the verdict." *United States v. Robinson*, 617 F.3d 984, 988 (8th Cir. 2010) (citation omitted).

Vang is right—the presence of a gun alone is not enough to prove possession in furtherance of a drug offense. There must be a connection between his possession of the gun and his drug crime, "such that this possession had the effect of furthering, advancing or helping forward the drug crime." Vang Br. 14 (quoting *United States v. Sanchez-Garcia*, 461 F.3d 939, 946 (8th Cir. 2006) (cleaned up). But he overlooks that the facts here establish that connection.

A nexus between a gun and a drug offense can be shown by "evidence that the firearm was used for protection, was kept near the drugs, or was in close proximity to the defendant during drug transactions." *Robinson*, 617 F.3d at 988 (citation omitted). "Drugs do not need to be found next to the firearms in order to establish a nexus"; rather, "[a] nexus can exist when a firearm is in proximity to items identified as relating to drug trafficking." *United States v. Druger*, 920 F.3d 567, 570 (8th Cir. 2019).

Vang's gun, drug ledgers, and drug money were all in his upstairs bedroom, two floors above the drugs. While we have not dealt with facts quite like these, we

-3-

have addressed a similar case. In *Sanchez-Garcia*, we said that the combination of a gun in a bedroom closet, the presence of drugs and paraphernalia in the adjoining kitchen, and expert testimony about how guns are used in drug trafficking were, together, sufficient evidence to support a guilty verdict for possession in furtherance of a drug crime. 461 F.3d at 947; *see also United States v. Rush-Richardson*, 574 F.3d 906, 909–10 (8th Cir. 2009) (evidence was sufficient where guns were found in a bedroom closet across the hall from another bedroom containing drugs and in a nearby kitchen containing drug paraphernalia and residue). Although the drugs here were in Vang's basement rather than in an adjoining room, drug money and drug ledgers—"items identified as relating to drug trafficking"—were found in the same room as the handgun. *Druger*, 920 F.3d at 570. Plus, like in *Sanchez-Garcia*, the Government introduced expert testimony at trial about the relationship between guns and drug trafficking.[2]

*Druger* and *Sanchez-Garcia* cover this case. There was enough evidence for the jury to infer a nexus between Vang's handgun and his drug trafficking offense.

## B.

Vang next challenges the district court's fact-finding at sentencing. We review findings of fact about drug quantities at sentencing for clear error. *United States v. Mesner*, 377 F.3d 849, 852 (8th Cir. 2004). We uphold the district court's

---

[2]Vang describes the expert's testimony as "the sort of generic, overgeneralized account which the courts have said is insufficient." Vang Br. 26. But we have upheld convictions where expert testimony establishes the link between guns discovered near drugs and drug trafficking, even if that is done through an explanation of general trends among drug dealers. *See Druger*, 920 F.3d at 570–71; *see also Sanchez-Garcia*, 461 F.3d at 946–47. Vang's alternative argument boils down to an attack on the expert's credibility—but "[i]t is the function of the jury, not an appellate court, to resolve conflicts in testimony or judge the credibility of witnesses." *United States v. Brooks-Davis*, 984 F.3d 695, 698 (8th Cir. 2021) (citation omitted).

findings "as long as the determination is plausible in light of the record as a whole." *United States v. Farrington*, 499 F.3d 854, 859 (8th Cir. 2007) (citation omitted).

Relying partly on the PSR, Vang argues that he was only responsible for 1,411 pounds of marijuana. That would yield a base offense level of 26. But the district court disagreed and concluded that when a CI visited Vang's home (between 10 and 20 times), the CI saw a replenished stash of 300 pounds of marijuana each time. Based on this, the district court attributed more than a thousand additional pounds of marijuana to Vang, which produced a new base offense level of 30. Vang says the district court did not have enough reliable evidence to draw that conclusion.

We conclude that the district court's finding was plausible in light of the whole record because the court relied on the "scale of the [drug] operation," "the drug ledgers" found in Vang's bedroom, and "the amount of money that was possessed." Sent. Tr. at 23. Vang does not explain why any of that evidence was insufficient or unreliable.

## C.

Vang finally argues that the district court erred by refusing to give him credit for acceptance of responsibility after he pleaded guilty to the conspiracy charge three days before trial. We review the district court's factual findings about acceptance of responsibility for clear error, *United States v. Greger*, 339 F.3d 666, 672 (8th Cir. 2003), and its legal conclusions *de novo*, looking to the "totality of the circumstances" and granting "great deference" to the district court's evaluation of responsibility. *United States v. Wattree*, 431 F.3d 618, 623 (8th Cir. 2005).

Vang says that he accepted responsibility by pleading guilty to the drug conspiracy offense and multiple elements of the gun offense. He argues that our caselaw requires that he receive sentencing credit because he admitted to possessing a firearm, which is relevant conduct for the drug offense. While he acknowledges

that he made his guilty plea just days before trial, he says that timeliness is just one of many factors we should consider.

The totality of the circumstances cuts against Vang. In *Wattree*, we said that "while [the defendant] did plead guilty to the drug offenses, his pleas were untimely, occurring only one week before trial and after the government prepared its case." *Id.* Vang's decision to plead guilty only three days before trial was even later.

Plus, although Vang admitted to two elements of his § 924(c) charge (that he joined a drug conspiracy and that he possessed a gun), he still contested his factual guilt on the final element: whether he possessed his gun in furtherance of the drug conspiracy. *See Greger*, 339 F.3d at 673 ("[C]redit for acceptance of responsibility may be granted when a defendant goes to trial *without denying the factual elements of guilt*" (emphasis added)); *see also Wattree*, 431 F.3d at 623 (noting that the defendant's refusal to plead guilty to the § 924(c) offense meant that he was "contest[ing] factual guilt on this charge" and concluding that this was the "[m]ost important[]" consideration when analyzing acceptance of responsibility). Vang's decision made the Government introduce evidence about the drug conspiracy.[3] Because the defendant in *Wattree* put the Government to its burden of proof on the § 924(c) charge, we held that he should not have received a reduction for acceptance of responsibility. *Id.* That is what happened here.

Like the defendant in *Wattree*, Vang pleaded guilty late and required the Government to establish guilt beyond a reasonable doubt. In light of Vang's

---

[3]Vang admitted to relevant conduct for the drug offense by stipulating that he possessed a firearm; but our inquiry is focused on the totality of the circumstances, not just the elements of the § 924(c) charge that relate to the relevant conduct for the drug offense. *See Wattree*, 431 F.3d at 623 (refusing to grant a reduction for acceptance of responsibility where the Government would not only have to prove Wattree "carried a firearm," [relevant conduct] but also "that he did so in furtherance of the charged drug offenses" [an element of § 924(c) that is not relevant conduct]).

eleventh-hour guilty plea and his decision to force the Government to prove its case, we affirm Vang's sentence.

III.

The judgment of the district court is affirmed.

_____